UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. S1-4:18 CR 975 CDP |
| | ) | |
| DUSTIN BOONE, and | ) | |
| CHRISTOPHER MYERS, | ) | |
| | ) | |
| Defendants. | ) | |

**REDACTED NOTICE OF INTENT TO USE ADDITIONAL INEXTRICABLY
INTERTWINED EVIDENCE AND/OR RULE 404(b) EVIDENCE, RULE 804(b)(5)
EVIDENCE, and** ███████████████

COMES NOW, the United States of America, by and through Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Robert F. Livergood and Carrie Costantin, Assistant United States Attorneys for said District, and files this notice in accordance with Rule 404(b) of the Federal Rules of Criminal Procedure to provide reasonable notice in advance of trial of the permitted purposes for which the Government intends to offer the evidence at trial, to provide notice of Rule 804(b)(5) Evidence, and to file a motion ████████████████ ███████. This notice only pertains to additional evidence not previously presented to the Court. The Government relies on the Court's prior ruling and intends to admit the following exhibits that have previously been admitted at trial: **Government Exhibits 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 258, 260, 262, 263, 264, 265, 266, 268, 269, 270, 274, 275, and 276.** This case is set for trial on June 7, 2021.

The Government asserts that the evidence listed in this notice is, in fact, intrinsic to the charged offenses and therefore not subject to Rule 404(b). The Government notifies the defendants

1

of its intended use of the listed evidence.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

All exhibits listed in this document, other than those previously admitted during the first trial, are contained on a DVD and submitted to the Court's chambers and mailed to the attorneys for the defendants.

## I.    Introduction

The Superseding Indictment charges defendant Dustin Boone with violating 18 U.S.C. §§ 2 and 242 (deprivation of civil rights under color of law); and defendant Christopher Myers with violating 18 U.S.C. § 1519 (destruction, alteration, or mutilation of evidence in a federal investigation). Both Boone and Myers were law enforcement officers at the time of the offenses.

## II.    Factual Background

Following the acquittal on September 15, 2017, of former St. Louis Metropolitan Police Department ("SLMPD") Officer Jason Stockley on a state murder charge stemming from an officer-involved shooting, there were multiple days of concentrated protests in and around St. Louis, Missouri. SLMPD and the City of St. Louis had notice of the impending verdict, planned their protest response, and organized its officers into response teams. Many officers, including defendants Boone and Myers, were detailed to the Civil Disobedience Team (CDT). SLMPD Detective L.H., a 22-year veteran officer of SLMPD, was assigned to work in an undercover capacity during the protests and was tasked with documenting protest activity and property destruction.

2

<u>The Arrest and Assault of L.H.</u>

During the evening of September 17, 2017, two days after the protests began, L.H. was working undercover and ended up at or around the St. Louis Public Library at the corner of 14th Street and Olive Street. At around the same time, Boone, Myers, and other CDT officers were walking north on 14th Street toward Washington Avenue. The CDT officers were walking in a double-file line. While the CDT was walking on 14th Street, there was very little protest activity at the intersection of 14th Street and Olive Street.

As the CDT approached the corner of 14th Street and Olive Street, CDT officers began running toward individuals who were running from pepper balls being dispersed by the SLMPD SWAT. L.H. was present in the area in his capacity as an undercover officer and was not committing any crime.

L.H. was standing on the corner of 14th Street and Olive Street between a portable generator and a traffic box. Believing that L.H. was a protester, defendants Boone and Hays took L.H. into custody. While taking him into custody, defendant Boone and Hays assaulted LH, using physical force that was both unnecessary and unreasonable. While L.H. was on the ground, and in a confined area, multiple officers were around him, struggling with his body and yelling at L.H. to put his hands out. Throughout the arrest, L.H. never resisted any of the officers around him or otherwise did anything to warrant the use of physical force against him. Nonetheless, officers used physical force against L.H. Specifically, Boone knelt on L.H.'s back and forced his head down on the cement, while telling L.H. not to look at him; Hays delivered strikes to L.H.'s body with his riot baton; and Myers intentionally mutilated or broke L.H.'s cellular phone and removed the battery from his camera. Boone's, Myers', and Hays' actions were without reason or provocation, and inconsistent with when it is lawful and appropriate for an officer to use such physical force.

3

A cell phone recording made by L.H. during his arrest and assault captured Hays' and other voices yelling at L.H., as well as images of Myers's face.

The following day, after roll call at the Electrician's Hall, a member of the SLMPD CDT team requested that all officers involved with the arrest at 14th Street and Olive Street meet him outside. Defendants Boone, Hays, Myers, Colletta, and a few other officers went outside. While meeting with the member of the command staff, the CDT officers learned that the arrestee was L.H. During this meeting, Boone admitted his role in the arrest.

## III.    Forfeiture by Wrongdoing[1]

Legal Argument

*Testimonial Statements*

The Sixth Amendment provides that a defendant has the right to confront the witnesses against him or her. U.S. Const. amend. VI. The Confrontation Clause applies to testimonial evidence. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004).[2]  Only testimonial statements "cause the declarant to be a 'witness' within the meaning of the confrontation clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006), citing *Crawford,* 541 U.S. at 51. Testimonial statements include, but are not limited to, "*ex parte* in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, . . . extrajudicial statements . . .   contained in formalized testimonial

---

[1] With great thanks to Sydney Alizadeh, an intern for the United States Attorney's Office, who conducted much of the legal research in this section.

[2] "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States the flexibility in their development of hearsay law. . .   and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is as issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.". *Crawford*, 541 U.S. at 68.

materials, such as affidavits, depositions, prior testimony, or confessions, . . . statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial, [and] . . . [s]tatements taken by police officers in the course of interrogations. . . ." *Crawford*, 541 US at 51-2. If a statement is not testimonial, then the Confrontation Clause does not apply. In the instant case, the Government will seek to introduce text messages and the occurrence of FaceTime communications (not the content), between Ashley Marie Ditto and Boone. As those communications were not made in anticipation of litigation, they would not be testimonial in nature. Even if they were considered testimonial, they should be permitted because of the application of the doctrine of forfeiture by wrongdoing.

### Wrongful Conduct

The rule of forfeiture by wrongdoing applies "where the defendant engaged in wrongful conduct designed to prevent a witness's testimony." *Giles v. California*, 554 U.S. 353, 367 (2008). The "rule of forfeiture by wrongdoing , , , extinguishes confrontation claims on essentially equitable grounds. . . ." *Crawford*, 541 U.S. at 62; *Davis v. Washington*, 547 U.S. 813, 834 (2006); *United States v. Carlson*, 547 F.2d 1346, 1359 (8th Cir. 1976). A defendant who forfeits his right of confrontation also forfeits his hearsay rights. *Cf. Giles, 554 U.S.* at 364-65 ("No case or treatise that we have found, however, suggested that a defendant who committed wrongdoing forfeited his confrontation rights but not his hearsay rights.").

The forfeiture by wrongdoing rule was codified in Federal Rule of Evidence 804(b)(6). *Id.* Rule 804(b)(6) provides that the rule against hearsay does not apply when a "statement offered against a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result." Fed. R. Evid. 804(b)(6).

5

This exception only applies if a witness is not available because the defendant intended to make the witness unavailable. *Giles*, 554 U.S. at 367.

In order to apply the forfeiture by wrongdoing exception, "a trial court must find, by a preponderance of the evidence, that (1) the defendant engaged or acquiesced in wrongdoing (2) that was intended to render the declarant unavailable as a witness and (3) that did, in fact, render the declarant unavailable as a witness." *United States v. Dinkins*, 691 F.3d 358, 383 (4th Cir. 2012); *see also United States v. Scott*, 284 F.3d 758, 762 (7th Cir. 2002). The wrongdoing does not require a criminal act. *Scott*, 284 F.3d at 765, citing Fed. R. Evid. 804(b)(6) advisory committee's note for 1997 Amendments ("The wrongdoing need not consist of a criminal act."). What is required is "conduct causing the absence of a witness . . . whatever the nature of the wrongdoing." *Fowler v. Fox*, 1:18-cv-01516-NONE-JLT (HC), 2020 WL 605349, *5 (E.D. Cal, Feb. 7, 2020) (citation omitted).

"Wrongdoing under this forfeiture doctrine can include conduct that is otherwise legal, including marriage with a victim to prevent her testimony through invocation of the marital privilege. Collusion by a defendant with a witness not to testify at criminal trial also satisfies the doctrine of forfeiture by wrongdoing." *Id.* (citations omitted); *Massachusetts v. Szerlong*, 933 N.E.2d 633, 638 (Mass. 2010).[3] It is sufficient to show that defendant's conduct, although not criminal, put the witness beyond the authority of the court. *Fowler*, 2020 WL 605349, *5. It is not necessary to "show that the defendant threatened, coerced, persuaded, or pressured a witness to avoid testifying, or physically prevented the witness from testifying. Where a defendant

---

[3] The marital privilege has two parts: the testimonial privilege which permits a spouse to refrain from testifying against the other spouse, and the marital communications privilege where either spouse can prevent the other from testifying about confidential communications made during the marriage. *Montague,* 421 F.3d at 1103. In *Montague*, the Government established by a preponderance of the evidence that the defendant procured his wife's unavailability as a witness. *See id*. at 1103.

actively assists a witness's efforts to avoid testifying, with the intent to keep the witness from testifying, forfeiture by wrongdoing may be established regardless of whether the witness already decided on her own not to testify." *Szerlong*, 933 N.E.2d at 638-39 (internal quotations, brackets and citation omitted). As the *Fowler* court noted, "[a]lthough criminal defendants have no duty to assist the state in proving their guilt, they do have a duty to refrain from acting in ways that destroy the integrity of the trial system." *Id*. citing *Davis*, 547 U.S. at 833.

*Procedure*

As stated above, the Government must show that (1) the defendant engaged or acquiesced in wrongdoing (2) that was intended to render the declarant unavailable as a witness and (3) that did, in fact, render the declarant unavailable as a witness. Once the Government has shown these factors, the Sixth Amendment's right of confrontation is extinguished, and the Rule 804(b)(6) hearsay exception applies.

In order to show the declarant is unavailable, Rule 804(a) indicates that "[a] declarant is considered to be unavailable as a witness if the declarant is . . . absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure . . . the declarant's attendance, in the case of hearsay exception under" Rule 804(b)(6). Fed. R. Evid. 804(b)(a)(5)(A). An evidentiary hearing may be held to determine whether a spouse is freely invoking the spousal privilege or is being coerced, but the court cannot force the spouse invoking the testimonial privilege to explain their reasons for invoking it. *Montague*, 421 F.3d at 1102-1103. The district court may rely on proffered evidence in making its determination. *Id.* (in *Montague* the defense stipulated to the proffer). Federal courts generally required the "preponderance-of-the-evidence standard." *Davis*, 547 U.S. at 833; *United States. v. Emery*, 186 F.3d 921, 926 (8th Cir. 1999); *see also United States v. Montague*, 421 F.3d 1099,

1102 (10th Cir. 2005).

<u>Application of Forfeiture by Wrongdoing Rule</u>

Here, the Government seeks to introduce text messages and other communications between Ashley Marie Ditto and Boone. The text messages are non-testimonial because they were not made in anticipation of litigation. The Government contends that Boone married Ashley Marie Ditto, at least in part, to wrongfully render her unavailable to testify as a witness. It is anticipated that Ashley Marie Ditto will assert the spousal privilege and will be unavailable to testify at trial.

The Government proffers that on September 17, 2017, Boone was broadcasting the protest to Ashley Marie Ditto when the assault of L.H. occurred. On that particular day, Boone had a cell phone affixed to his garments in such a manner as to allow it to capture the events during the protest. (Exhibit 1). He then started to communicate with Ashley Marie Ditto using text messages and FaceTime.[4] FaceTime calls are not recorded nor stored by Apple.[5] Apps can be used to record the calls, but there is no indication that Boone used such an app to record FaceTime phone calls on September 17, 2017, nor were any such videos located.

Boone and Ashley Marie Ditto frequently used FaceTime to communicate with each other. From June 30, 2017, to September 18, 2017, they communicated via FaceTime on at least 24 occasions that were at least two minutes in duration. *See*, infra, Sections V(B)(1) - V(B)(3). Additionally, Boone frequently video recorded while on duty. *See*, infra, Section V(C).

As he had done many times in the past, prior to the assault on L.H. on September 17, 2017, Boone communicated with Ashley Marie Ditto. *See*, infra, Section V(B)(2). He started off

---

[4] According to the website MacRumors, "Facetime is Apple's video and audio chatting platform that lets iPhone users communicate with one and other through the standard FaceTime video protocol or using the FaceTime audio feature." *See* https://www.macrumors.com/guide/facetime/; *see also* https://support.apple.com/en-us/HT209110.
[5] See https://techboomers.com/t/facetime-safety-security-privacy.

8

with a 31 second FaceTime with Ashley Marie Ditto, at 8:41 p.m. He then texted her that he would FaceTime her when he got closer. He said he would not talk with her but would try to get the phone close to his radio so that Ashley Marie Ditto could hear the radio too. Then at 8:46 p.m. he started to FaceTime her and it lasted for 59 minutes and 28 seconds.

At about 8:53 p.m., while Boone's FaceTime was active, the assault of L.H. began. During the assault, police were yelling at L. H. to "Get on the ground," "hands out," and "let me see your hands." At about 9:46 p.m. the FaceTime between Boone and Ashley Marie Ditto ended. At 9:52 p.m., Ashley Marie Ditto texted, "Lol   no! That's so gross. But damn you guys need to practice more. Even I was confused. One guy was sayin HANDS DOWN, HANDS DOWN, Next dude saying HANDS UP. Then HANDS DOWN, HANDS DOWN, GET YOUR FUCKIN HANDS UP. 🤣🤣🤣🤣"[6]   Then Ashley Marie Ditto texted that the FaceTime was "cool." *See*, infra, Section V(B)(2).

The next day, at 1:00 p.m., Boone texted Kyle Santa that he was getting his "ass chewed for the [L.H.] stuff . . . " Around 3:15 p.m., Boone texted Randy Hays that "Everyone seems to think that we r ok. Still don't like it hanging over me tho!" (Gov. Ex. 260 – from first trial). Four minutes later he texted Ashley Marie Ditto, " Nothing about that story to anyone please. Not something I am proud of and not entertaining at all at this point. I love you." She responded, "No way. I would never say anything. My heart hurts for you." *See*, infra, Section V(B)(2).

██████████████████████████████████████████████████

█████████████████████████████████████████ The next day, August 15, 2018, Defendant Boone and Ashley Marie Ditto obtained a marriage license. (Exhibit 3). On that

---

[6] "The rolling on the floor laughing emoji is a more intensive version of the face with tears of joy emoji. Also know as the ROFL emoji, it depicts a smiling face crying tears of joy while leaning to one side, as if rolling over with uncontrollable laughter. It is used to mark anything that is extremely hilarious." *See* https://www.dictionary.com/e/emoji/rolling-floor-laughing-emoji/

same day, they were married by the Honorable Richard M. Stewart, Associate Circuit Judge in

St. Louis County, Missouri. *Id.* ████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

10



These facts indicate that at least one of the reasons that Boone and Ashley Marie Ditto were married is so that she would not have to testify. The FaceTime and text messages indicate that Ashley Marie Ditto was able to view what was occurring when L. H. was assaulted by police. Furthermore, once Boone realized that L.H. was a police officer, he asked her not to tell anyone about what happened. ███████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████

*Unavailability to testify*

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████

<u>Conclusion</u>

As this proffer shows, Boone and his girlfriend, Ashley Marie Ditto, exchanged text

messages that he was going to broadcast the protest to her on September 17, 2017. He used
FaceTime to broadcast the protest, including the assault of L.H., to Ashley Marie Ditto. Ashley
Marie Ditto observed the protest and assault and commented, via text messages, that she
observed the assault. Boone, on September 18, 2017, asked Ashley Marie Ditto not to tell anyone
about it.

## IV.    Rule 404(b)

Rule 404(b) states, in part:

(1) Evidence of any other crime, wrong, or act is not admissible to prove a person's
character in order to show that on a particular occasion the person acted in
accordance with the character.

(2) This evidence may be admissible for another purpose, such as proving motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake, or lack of accident.

Fed. R. Evid. 404(b)(1) and (2). Such evidence is admissible if "(1) it is relevant to a material
issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported
by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative
value." *United States v. Smith*, 978 F.3d 613, 616 (8th Cir. 2020) (citation and internal quotations

omitted). Rule 404(b) is a rule of inclusion. *United States v. Pierson,* 544 F.3d 933, 940 (8th Cir. 2008). The Court conducts a Rule 403 balancing test to determine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice. *Id.*

"Rule 404(b) applies only to extrinsic, not intrinsic, evidence." *United States v. Thomas*, 760 F.3d 879, 883 (8th Cir. 2014); *United States v. Guzman*, 926 F.3d 991, 999 (8th Cir. 2019).

Intrinsic evidence is evidence offered for the purpose of providing the context in which the charged crime occurred, completes the story, or provides a total picture of the charged crime. *Thomas*, 760 F.3d at 883. "A jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decision in a void-without knowledge of the time, place and circumstances of the acts which form the basis of the charge." *United States v. Moore*, 735 F.2d 289, 292 (8th Cir. 1984), *see also United States v. Hall,* 604 F.3d 539, 543 (8th Cir. 2010) ("'We have consistently held crimes or acts which are inextricably intertwined with the charged crime are not extrinsic and Rule 404(b) does not apply.' Evidence of other crimes or acts is inextricably intertwined if it is an 'integral part of the immediate context of the crime charged." (citations omitted)).

In *United States v. Johnson,* 463 F.3d 803, 808 (8th Cir. 2006), the court stated:

> We have held that Rule 404(b), which governs the admission into evidence of wrongful conduct other than the conduct at issue, applies "only to 'extrinsic' and not to 'intrinsic' evidence." *United States v. Swinton*, 75 F.3d 374, 377 (8th Cir. 1996). Evidence of other wrongful conduct is considered intrinsic when it is offered for the purpose of providing the context in which the charged crime occurred. *United States v. Forcelle*, 86 F.3d 838, 842 (8th Cir.1996). Such evidence is admitted because "the other crime evidence 'completes the story' or provides a 'total picture' of the charged crime." *Id.*

Here, except as otherwise noted, the additional evidence completes the story and provides a total picture of the charged crimes.

14

An example of a text message being used as intrinsic evidence is found in *United States v. Ross*, 969 F.3d 829 (8th Cir. 2020). In that case, defendants Ross and King decided to commit a robbery because King needed money to make a car payment. Ross sent a text message to King: "Sup foo lets rob these Mexicans down here." Two days later, Ross sent another text message to King asking to meet. King responded that he was on the way. *Id.* at 835. Ross and King then carjacked, kidnapped and eventually murdered the victim. *Id.* Ross and King were identified and charged. *Id*. at 836.

King and Ross proceeded to trial. During the trial, the district court admitted the text message, "Sup foo lets rob these Mexicans down here." The court of appeals found that even though the victim was not Mexican, the message was inextricably intertwined with the charged offense: "The evidence suggested that the motive for the robbery was pecuniary gain, so it was reasonable to infer that the identity of the victim was not central to the conspiracies: a proposal to rob 'Mexicans' easily could have evolved into a plan to rob [the victim]." *Id.* at 842.

The texts described below, complete the story and provide a total picture of the charged crimes. If the Court concludes that the texts are not inextricably intertwined, the texts are nonetheless admissible under Rule 404(b) to prove "motive, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. 404(b); *see also Pierson,* 544 F.3d at 940.

## V.    Records to be used at trial

### A.  Boone's Text Messages

#### 1.   Boone's Text Message from March 20, 2017, 9:07

Boone's text is intrinsic evidence because the text provides the context in which the charged crime occurred by telling the complete story. The text, "Fuckin niggers," is probative of

his animosity towards African Americans (L.H. is African American).

If the Court determines that the text is not intrinsic evidence, the text is admissible under Rule 404(b) for the purpose of showing Boone's animosity towards African Americans, and that Boone's actions with respect to L.H. were willful and not the result of mistake or accident. Additionally, his actions as indicated in the text message, as well as those against L.H., are against his code of ethics as a police officer with the St. Louis Metropolitan Police Department: "As a law enforcement officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice." (Metropolitan Police Department – City of St. Louis Office of the Police Commissioner Special Order, Date Mar. 9, 2016, Order No. SO 1-07) (hereinafter, "Special Order 1-07"). Thus, the text message not only shows his animosity towards African Americans, but also his intent to disregard his code of ethics so as to deprive others of their constitutional rights.

| From | To | St. Louis Time | Body |
|---|---|---|---|
| Dustin Boone | Tim Strain | 3/20/17 9:07 | Fuckin niggers |

### 2.  Boone's texts of taser incident from April 19, 2017, 12:12

Boone's texts are intrinsic evidence and are probative of his intent and motive to assault African American protesters. The text shows that Boone's subsequent actions regarding L.H. were willful, and were committed with a bad purpose or improper motive to disobey or disregard the law and his intent to deprive a protester, in this case L.H., of his right to be free from the use of

16

unreasonable seizure and force. *See* Jury Instructions (Doc. #392), at 13-17.

If the Court determines it is not intrinsic evidence, it is admissible under Rule 404(b) to show that Boone "acted willfully when he deprived [L.H.] of his right to be free from unreasonable force." *United States v. Colin J. Boone*, 828 F.3d 705, 711 (8th Cir. 2016). In the *Colin J. Boone* case, the defendant was charged with using unreasonable force in violation of 18 U.S.C. § 242. The charged offense occurred in 2013 when the defendant kicked a suspect in the face. *Id.* at 708. During the trial that followed, the Government introduced a video of the defendant using force against another suspect in 2009. There, he lifted the suspect by her arm and assaulted her with his hands. *Id.* at 710. The Eighth Circuit Court of Appeals held that the 2009 incident was admissible under Rule 404(b). It found evidence of the defendant's use of force against the 2009 suspect was relevant to show that the defendant "acted willfully when he deprived [the 2013 suspect] of his right to be free from unreasonable force." *Id.* at 711. The defendant "placed his state of mind squarely at issue and rendered evidence of his prior use of unreasonable force probative of his intent, knowledge, motive, and absence of mistake in his use of force against [the 2013 suspect]." *Id.* at 711.

Boone's texts are probative of his intent and motive to assault protesters and are against his code of ethics as a law enforcement officer. *See*, supra, Special Order 1-07. The texts show that Boone's subsequent actions regarding L.H. were willful, and were committed with a bad purpose or improper motive to disobey or disregard the law and his intent to deprive a protester, in this case L.H., of his right to be free from the use of unreasonable seizure and force. *See* Jury Instructions (Doc. #392), at 13-17.

| From | To | St. Louis Time | Body |
|---|---|---|---|
| Dustin Boone | Mom, Kayla, Kelsea, Ashley Marie, Dad | 4/19/17 12:12 | Ooooohhh!!! Took a head shot w the taser!!! Hahahahhaa Santa and I just smoked 2 dudes |
| Dustin Boone | Tim Strain, Chris Narez, Marcus Biggins, Shawn Griggs, Mcinerny | 4/19/17 17:05 | Dude caught a tampering 1st, resisting, stealing of a motor vehicle out of the county and a TASER to the fuckin dome?    Other one was just a body shot. Caught him in some THICK over grow in a side vacant lot, there was nobody around except me. Shaw, shithead and god... he is at the hospital now... poor guy. |
| Shawn Griggs | Dustin Boone, Tim Strain, Chris Narez, Marcus Biggins, Mcinerny | 4/19/17 17:06 | Thats fuckin hilarious! Strong work! |
| Dustin Boone | Shawn Griggs, Tim Strain, Chris Narez, Marcus Biggins, Mcinerny | 4/19/17 17:08 | Hahaha we made him tell the other offficers on scene that he is a pussy! Hahaha he was puking on himself while EMS was looking at him and saying "I'm a pussy, in a pussy." And crying...... it was the greatest moment of my short career! Lol |
| Dustin Boone | Scott Hubbard, Brandon Hubbard | 4/20/17 9:40 | Got em!!!! Hahaha TASER to the head! |
| Brandon Hubbard | Dustin Boone, Scott Hubbard | 4/20/17 9:43 | You messed that niggers hat up man..... lol |
| Dustin Boone | Scott Hubbard, Brandon Hubbard | 4/20/17 9:44 | Hell yeah he went down! Then started puking and seizing! Lol we made him tell everyone on scene that he is a pussy...... and he listened! Haha he was crying and saying "I'm a pussy, pussy" lol |

18

### 3. Boone's text to Ashley Marie Ditto, et al, on June 24, 2017, 23:46

Boone's text is intrinsic evidence because the text provides the context in which the charged crime occurred by telling the complete story. The text, "These fuckin niggers r the same as St. Louis niggers," is probative of his animosity towards African Americans. It also shows a violation of his ethical duty to protect against oppression and to respect the constitutional rights of others. *See* Special Order 1-07, supra

If the Court determines that the text is not intrinsic evidence, the text is admissible under Rule 404(b) for the purpose of showing Boone's animosity towards African Americans, and that Boone's actions with respect to L.H. were willful and not the result of mistake or accident.

| From | To | St. Louis Time | Body |
|------|-----|-----|------|
| Dustin Boone | Kayla, Kelsea, Mom, Ashley Marie, Dad | 6/24/17 23:46 | What city r we in?<br>These fuckin niggers r the same as St. Louis niggers. |

### 4. Boone's Text from July 17, 2017, 11:49

Boone's text is intrinsic evidence because the text provides the context in which the charged crime occurred by telling the complete story. The text, "It's already a state of emergency! There r niggers running wild all across the city and even if/when we catch them..... they don't get in any trouble because there are plate lips running the CAO!," is probative of his animosity towards African Americans. It also shows a willful violation of his ethical duty to protect against oppression and to respect the constitutional rights of all. *See* Special Order 1-07, supra

If the Court determines that the text is not intrinsic evidence, the text is admissible under Rule 404(b) for the purpose of showing Boone's animosity towards African American, and that

Boone's actions with respect to L.H. were not as the result of mistake or accident.

| From | To | St. Louis Time | Body |
|---|---|---|---|
| Dustin Boone | Tim Strain, Chris Narez, Marcus Biggins, Shawn Griggs, Mcinerny | 7/17/17 11:49 | It's already a state of emergency! There r niggers running wild all across the city and even if/when we catch them..... they don't get in any trouble because there are plate lips running the CAO! |

### 5. Boone's text regarding slapping on October 12, 2017, 15:38

Boone's text is admissible under Rule 404(b). The text is probative of Boone's state of mind with respect to apprehending suspects and his actions described in the text is similar to those that occurred with L.H., when L.H. testified, "After that, I feel pressure on my body, and it was just, as policemen call it, a free-for-all. I could feel just nothing but boots, sticks, and fists striking my body." Tr. Vol. 4, at 47:6-8. The text is admissible for the purpose of showing Boone's motive and intent to assault suspects, and that his actions were willful and not the result of a mistake or accident. Additionally, the text shows his intent to violate the constitutional rights of others in violation of Special Order 1-07.

| From | To | St. Louis Time | Body |
|---|---|---|---|
| Dustin Boone | Mcinerny | 10/12/17 15:38 | I've open hand slapped him one time down there when santa and I were doing shit w MR. he is an ignorant mother fucker! We didn't arrest him but he got his eyes widened a little with a slap from a white boy. Lol |

### 6. Boone's text regarding taking cash on December 14, 2017, 1:59

Boone's text is admissible under Rule 404(b). The text is probative of Boone's state of

20

mind. The text demonstrates Boone's motive and intent to fail "to safeguard lives and property" and "respect the constitutional rights of all to liberty, equality and justice," just as he failed to do so with L.H.

| From | To | St. Louis Time | Body |
|------|-----|------|------|
| Dustin Boone | Christopher Myers | 12/14/17 1:59 | I don't know if sarge is cool w taking any of that cash. I grabbed the 20s for us but I don't know how he will Be about it?? |

### 7.  Boone's text from March 28, 2018, 9:01

Boone's texts are admissible under Rule 404(b). The texts are probative of Boone's state of mind with respect to apprehending suspects and his actions described in the texts show his knowledge of RTCC cameras and attempt to avoid his actions from being captured by the cameras. The text is admissible for the purpose of showing Boone's motive and intent to assault suspects and to conceal the assault, and that his actions were willful and not the result of a mistake or accident.

| From | To | St. Louis Time | Body |
|------|-----|------|------|
| Beau Wethington | Dustin Boone | 3/28/18 9:01 | I hope u beat that kids ass |
| Dustin Boone | Beau Wethington | 3/28/18 9:04 | We didn't take him to children's for nothin! Lol<br><br>There r so many damn RTCC cameras in the fifth now, I had to literally drag him behind a privacy fence to avoid one. Can't believe how inconvenient they have made things! |

21

### B. FaceTime Communications

#### 1. Boone's FaceTime Communications with Ashley Marie Ditto prior to September 17, 2017

These communications are not 404(b) evidence but are relevant to show that Boone and

Ashley Marie Ditto were familiar with and frequently communicated with each other using

FaceTime.

| From | To | St. Louis Time | Length of FaceTime Communication |
|---|---|---|---|
| Dustin Boone | Ashley Marie | 6/30/17 21:02 | [FaceTime - 00:02:34] |
| Ashley Marie | Dustin Boone | 7/1/17 8:22 | [Face Time - 0:02:37] |
| Dustin Boone | Ashley Marie | 7/1/17 9:36 | [FaceTime - 00:02:56] |
| Dustin Boone | Ashley Marie | 7/1/17 18:07 | [FaceTime - 00:06:19] |
| Ashley Marie | Dustin Boone | 7/1/17 14:12 | [FaceTime - 00:05:250 |
| Dustin Boone | Ashley Marie | 7/5/17 11:24 | [FaceTime - 00:02:12] |
| Dustin Boone | Ashley Marie | 7/12/17 8:09 | [FaceTime - 00:03:45] |
| Dustin Boone | Ashley Marie | 7/13/17 16:31 | [FaceTime - 00:03:05] |
| Dustin Boone | Ashley Marie | 7/15/17 9:47 | [FaceTime - 00:05:45] |
| Ashley Marie | Dustin Boone | 7/21/17 10:43 | [FaceTime - 00:02:53] |
| Ashley Marie | Dustin Boone | 7/28/17 16:30 | [FaceTime - 00:09:10] |
| Dustin Boone | Ashley Marie | 7/31/17 19:38 | [FaceTime - 00:02:42] |
| Dustin Boone | Ashley Marie | 8/1/17 22:06 | [FaceTime - 00:02:56] |
| Dustin Boone | Ashley Marie | 8/4/14 9:12 | [FaceTime - 00:02:24] |
| Dustin Boone | Ashley Marie | 8/4/17 20:24 | [FaceTime - 00:06:35] |
| Dustin Boone | Ashley Marie | 8/15/17 8:13 | [FaceTime - 00:02:47] |
| Dustin Boone | Ashley Marie | 8/16/17 8:48 | [FaceTime - 00:02:24] |

22

| | | | |
|---|---|---|---|
| Ashley Marie | **Dustin Boone** | 8/19/17 8:04 | [FaceTime - 00:06:01] |
| **Dustin Boone** | Ashley Marie | 8/29/17 9:00 | [Facetime - 00:02:40] |

### 2. Boone's Photo, FaceTime and Texts with Ashley Marie Ditto on September 17, 2017, and September 18, 2017

These communications (FaceTime and text messages) are admissible under the Doctrine of Forfeiture by Wrongdoing and Fed. R. Evid. 804(b)(6), for the truth of the matter asserted. As stated above, Boone married Ashley Marie Ditto, at least in part so she would not be able to testify about these communications. Therefore, under Rule 804(b)(6) and Forfeiture by Wrongdoing, the text messages of Ashley Marie Ditto are admissible for the truth of the matter asserted.

If the Court determines that neither Forfeiture by Wrongdoing nor that Rule 804(b)(6) applies, then the following text of Ashley Marie Ditto is nevertheless admissible, not for the truth of the matter asserted, but to show that Boone was present when the assault of L.H. occurred and that Ashley Marie Ditto observed the assault: "Lol no! That's so gross. But damn you guys need to practice more. Even I was confused. One guy was sayin HANDS DOWN, HANDS DOWN. Next dude saying HANDS UP. Then HANDS DOWN, HANDS DOWN, GET YOUR FUCKIN HANDS UP. 🤣🤣🤣🤣" For Ashley Marie Ditto to make these comments, she must have watched the assault occur, which means that Boone was present for the assault, and FaceTiming the assault live to Ashley Marie Ditto.

| From | To | St. Louis Time | Body |
|---|---|---|---|
| **Dustin Boone** | Ashley Marie | 9/17/17 20:40 | [FaceTime for 00:00:31] |
| **Dustin Boone** | Ashley Marie | 9/17/17 20:41 | I'll FaceTime u when we get close |

23

| | | | |
|---|---|---|---|
| Dustin Boone | Ashley Marie | 9/17/17 20:41 | I won't say anything tho.    Should have told u first! |
| Dustin Boone | Ashley Marie | 9/17/17 20:42 | I'll try to get it so u can hear the radio too |
| Ashley Marie | Dustin Boone | 9/17/17 20:46 | I'm watching this.    Sorry |
| Dustin Boone | Ashley Marie | 9/17/17 20:46 | [Dustin Boone Facetimed Ashley Marie - 00:59:28] |
| Dustin Boone | Ashley Marie | 9/17/17 20:46 | [FaceTime - 00:59:28] |
| Ashley Marie | Dustin Boone | 9/17/17 21:52 | Lol no! That's so gross.<br><br>But damn you guys need to practice more. Even I was confused.<br>One guy was sayin HANDS DOWN, HANDS DOWN.<br><br>Next dude saying HANDS UP.<br><br>Then HANDS DOWN, HANDS DOWN, GET YOUR FUCKIN HANDS UP. 😂😂😂😂 |
| Ashley Marie | Dustin Boone | 9/17/17 21:57 | That was SOOOOOO COOL!!!! |
| Dustin Boone | Ashley Marie | 9/17/17 21:57 | What was? The FaceTime? Or just all of it together? |
| Ashley Marie | Dustin Boone | 9/17/17 22:05 | The FaceTime |
| Dustin Boone | Ashley Marie | 9/17/17 23:01 | [FaceTime - 00:35:26] |
| Dustin Boone | Ashley Marie | 9/18/17 10:40 | [FaceTime - 00:01:41] |
| Dustin Boone | Ashley Marie | 9/18/17 15:19 | Nothing about that story to anyone please. Not something I am proud of and not entertaining at all at this point. I love you |
| Ashley Marie | Dustin Boone | 9/18/17 15:19 | No way. I would never say anything. My heart hurts for you |

### 3. Boone's FaceTime Communications with Ashley Marie Ditto after September 18, 2017

These communications are not 404(b) evidence but are relevant to show that Boone and

Ashley Marie Ditto were familiar with and frequently communicated with each other using

24

FaceTime.

| From | To | St. Louis Time | Length of FaceTime Communication |
|---|---|---|---|
| Dustin Boone | Ashley Marie | 9/20/17 10:11 | [FaceTime - 00:02:52] |
| Dustin Boone | Ashley Marie | 9/26/17 21:42 | [FaceTime - 00:04:01] |
| Ashley Marie | Dustin Boone | 11/4/17 21:00 | [FaceTime - 00:04:28] |
| Dustin Boone | Ashley Marie | 11/10/17 15:42 | [FaceTime - 00:02:11] |

### C. Boone's video recording while on duty

These videos are not 404(b) evidence but are relevant to show Boone's pattern of using his phone to video record while on duty, as when he broadcasted live video to Ashley Marie Ditto during the L.H. assault on September 17, 2017. (The videos listed below are contained in the "Videos" folder in the DVD accompanying this document).

| St. Louis Time | Video File | Description of Video |
|---|---|---|
| 10/8/16 | [IMG_0024.MOV] | Video of police cart with sirens on |
| 12/31/16 | [IMG_0462.MOV] | Video in car with communications in background |
| 2/8/17 | [IMG_0608.MOV] | Video of arrest - arrestees sitting on sidewalk |
| 2/8/17 | [IMG_0609.MOV] | Video of arrest - arrestees sitting on sidewalk |
| 4/2/17 | [IMG_0837.MOV] | Video of driving down alley/street with cars parked on both sides and people standing by cars |
| 5/28/17 | [IMG_0116.MOV] | Video inside car with radio playing |
| 7/24/17 | [IMG_0393.MOV] | Video driving down alley |

### D.  Boone's Communications concerning drugs

Text messages, photographs, and reminders on Boone's phone show that he has communicated about his use of drugs from November 2016 through May 2018. These drugs include Concerta, Adderall, Amphetamine Salt, addie, and Mydayis.

Regarding the effects of the drugs, Boone described the effects of Concerta and Adderall in a text on October 2, 2017: "Depends on if he wants to feel like he feels like seeing in HD and making night turn into day (adderall) or if he just wants to feel a really really focused white guy (concerta). Adderall is essentially cocaine base in a compressed pill form....... it's pretty special. It makes u chew on ur tongue and lick ur lips like a crack head and u can't stop talking for the first 8 hours. It is also nearly impossible to get drunk AND cures hangovers in a matter of 11 minutes. I'm not even lying about ANY of that Kyle! Lol I'm serious!"

Amphetamine salt combo is the generic for Adderall.[7]  Regarding Mydayis, the Mydayis website states: "Mydayis is a federally controlled substance (CII) because it contains amphetamine that can be a target for people who abuse prescription medicines or street drugs."[8] Addies is another name for Adderall. [9]

Boone's use of Adderall and Adderall related drugs constitutes 404(b) evidence. As the following text messages show, Boone not only used the drugs but provided them to others. The

---

[7] https://www.goodrx.com/blog/whats-the-difference-between-adderall-and-adderall-xr/#:~:text=The%20generic%20for%20Adderall%20is,medications%20contain%20amphetamine%20and%20dextro amphetamine.

[8] See the following website:
https://www.mydayis.com/?utm_medium=cpc&utm_source=google&utm_campaign=TAK%7CMydayis%7CADH D%7CDTC%7C%7C%7CMydayis+Consumer+Branded&utm_term=mydayis_exact&utm_content=Brand+-+Mydayis+Only&gclid=EAIaIQobChMI0qXnsbiu8AIVmbfICh01cAQJEAAYASAAEgJNBfD_BwE&gclsrc=aw.d s

[9] Addies: "A shortened way of saying Adderall, also known as the Smart Drug or Study Drugs. It is a prescription drug to treat ADHD, but it often dangerously used by kids to focus on exams." https://www.imom.com/a-guide-to-teen-drug-slang/

use of controlled substances not medically prescribed violates St. Louis Metropolitan Police Department's standards of conduct. *See* Standards of Conduct (26.1.1). His willful disregard of the standards of conduct demonstrates that when he disregarded the policies to protect individuals, such as L.H., he acted willfully, and not as the result of accident or mistake. In addition, the use of these drugs during this time period is directly relevant to his state of mind on September 17, 2017, the date of the assault.

(The images listed below are contained in the "Images" folder in the DVD accompanying this document).

### 1.  Boone's Reminder from November 8, 2016, 10:00

| St. Louis Time | Reminder |
|---|---|
| 11/8/16 10:00 | Target for Concerta |

### 2.  Boone's Reminder from November 10, 2016, 9:00

| St. Louis Time | Reminder |
|---|---|
| 11/10/16 9:00 | Concerta script |

### 3.  Boone's text messages and Ashley Marie Ditto's response concerning Anavar and Adderall, May 15, 2017, 9:44

| From | To | St. Louis Time | Body |
|---|---|---|---|
| Dustin Boone | Ashley Marie | 5/15/17 9:44 | U start the Anavar? |
| Ashley Marie | Dustin Boone | 5/15/17 9:47 | No, not today. Tomorrow. I have 3 interviews so I took adderall |

**4. Ashley Marie Ditto's text to Boone concerning from June 5, 2017, 7:55**

| From | To | St. Louis Time | Body |
|---|---|---|---|
| Ashley Marie | Dustin Boone | 6/5/17 7:55 | Lola's clothes, shoes, socks and pull up change are on the couch upstairs.<br><br>Her medicine is on the counter in the kitchen.<br><br>Your concerta is in a snack baggy on the dining table next to your hair stuff. |

**5. Boone's Photo of Prescription from July 24, 2017, 9:25**

| St. Louis Time | File | Description |
|---|---|---|
| 7/24/17 | [IMG_0389.JPG] | Image of Amphetamine Salt Prescription |
| 7/24/17 | [IMG_0390.JPG] | Image of Amphetamine Salt Prescription |

**6. Boone's text regarding Concerta**

| From | To | St. Louis Time | Body |
|---|---|---|---|
| Dustin Boone | Ashley Marie | 7/31/17 10:13 | Do I have all of the concerta? |
| Dustin Boone | Ashley Marie | 8/1/17 9:10 | Where is all of the rest of the concerta babe? I had one bottle that was literally FULL then another w 30 in it. Not there is just one bottle with about 20 in there and that's it? |
| Ashley Marie | Dustin Boone | 8/1/17 9:16 | We have both been taking concerta since the adderall was out and at that concert I gave Gavin and Karen the rest of that bottle except for like 5 because you already had another bottle. They have been taking that concerta she said lol |

28

### 7. Boone's text regarding Concerta on October 2, 2017

| From | To | St. Louis Time | Body |
|------|-----|------|------|
| Kyle Santa | Dustin Boone | 10/2/17 19:46 | Busso wants to try your concerta. U got an extra pill? |
| Dustin Boone | Kyle Santa | 10/2/17 19:56 | Yes I do. He wants concerta, not adderall? |
| Kyle Santa | Dustin Boone | 10/2/17 19:59 | Which do u recommend |
| Dustin Boone | Kyle Santa | 10/2/17 20:10 | Depends on if he wants to feel like he feels like seeing in HD and making night turn into day (adderall) or if he just wants to feel a really really focused white guy (concerta). Adderall is essentially cocaine base in a compressed pill form....... it's pretty special. It makes u chew on ur tongue and lick ur lips like a crack head and u can't stop talking for the first 8 hours. It is also nearly impossible to get drunk AND cures hangovers in a matter of 11 minutes. I'm not even lying about ANY of that Kyle! Lol I'm serious! |
| Dustin Boone | Kyle Santa | 10/2/17 20:12 | I'll give him some of each so he can experiment. |
| Kyle Santa | Dustin Boone | 10/2/17 20:14 | Concerta it is. How long in your system? |
| Dustin Boone | Kyle Santa | 10/2/17 20:17 | 2 days. Most drug tests won't detect concerta anyway because it is not amphetamine based. |

### 8. Boone's text regarding addie on October 26, 2017, 22:03

| From | To | St. Louis Time | Body |
|------|-----|------|------|
| Dustin Boone | Ashley Marie | 10/17/17 19:09 | This new addie is SMOOTH! Not like the other instant release where u r tweaking and sweating |

29

9. **Boone's texts regarding Mydayis from May 26, 2018, and May 29, 2018**

| From | To | St. Louis Time | Body |
|------|------|------|------|
| Marcin Zajac | Dustin Boone | 5/25/18 16:00 | Bring the pills |
| Dustin Boone | Marcin Zajac | 5/25/18 16:14 | U aren't ready for them. |
| Marcin Zajac | Dustin Boone | 5/25/18 16:15 | Lol |
| Marcin Zajac | Dustin Boone | 5/26/18 16:11 | Dude, that stuff is actually making m me feel happy 😊 |
| Marcin Zajac | Dustin Boone | 5/26/18 16:11 | I feel very energized |
| Marcin Zajac | Dustin Boone | 5/26/18 17:03 | I'm gonna have to Get a script for that |
| Dustin Boone | Marcin Zajac | 5/26/18 17:19 | Hahahaha your motivation and energy should be through the roof! It's good stuff. And lasts all day |
| Marcin Zajac | Dustin Boone | 5/26/18 17:22 | Can I take another one if I took One this morning |
| Dustin Boone | Marcin Zajac | 5/26/18 17:26 | U can do anything u want, but I don't think u will like yourself for doing it. It's gonna kick back in again, the second wave comes in 8-10 hours after u take it. |
| Marcin Zajac | Dustin Boone | 5/26/18 17:27 | Oh ok, what's it called I'm gonna get my doctor to give it to me |
| Dustin Boone | Marcin Zajac | 5/26/18 17:29 | Oh, and your heart may explode. But yeah, other than that, ur good. |
| Dustin Boone | Marcin Zajac | 5/26/18 17:29 | It's called Mydayis. |
| Marcin Zajac | Dustin Boone | 5/26/18 17:30 | Hahah |
| Marcin Zajac | Dustin Boone | 5/26/18 17:30 | Dude I feel fucking awesome |
| Marcin Zajac | Dustin Boone | 5/29/18 13:54 | How many milligrams is that medicine |
| Dustin Boone | Marcin Zajac | 5/29/18 13:56 | 50 |
| Dustin Boone | Marcin Zajac | 5/29/18 13:56 | Extended release |
| Marcin Zajac | Dustin Boone | 5/29/18 13:56 | Clear |

### E.  Myers' Text Messages

####  1.  YouTube Video of Myers (April 2016) and Text Messages concerning video (January 24, 2017, September 16, 2017)

These texts concern Myers' response to a YouTube video that was posted about him. The YouTube video states it is from April 27, 2016. (The YouTube video is contained in the "Videos" folder in the DVD accompanying this document). The video shows a male in handcuffs. The person recording the video asks why the officers are there and an officer responds, "shots fired…." The video then shows Chris Myers entering a police vehicle. The person recording the video asks Chris Myers for his name. Chris Myers covers his name tag and says, "officer." When the person asks "officer…..?," Myers responds "get the fuck out of here." This conduct is similar in nature to Myers destroying L.H.'s cell phone and removing the battery from L.H.'s camera on September 17, 2017, because both incidents show Myers is trying to conceal his identity: he covers his nametag and refuses to give his name in the YouTube video, and regarding the assaults, destroys the iPhone and removes the battery from the camera to destroy any evidence of the assault. The Government plans to play the YouTube video as well as to introduce the following texts.

| From | To | St. Louis Time | Body |
|------|-----|------|------|
| Tara Casey | Christopher Myers | 1/24/17 0:16 | it's all good lol i've seen your "officer get the fuck out of here" video |
| Christopher Myers | Tara Casey | 1/24/17 0:42 | Ouch yea it wasn't my best day lol |
| Pat Hernandez | Christopher Myers | 9/16/17 0:43 | Damn, be safe. I'm sure no one will try to fuck with Officer Get the Fuck outta here though lol |
| Christopher Myers | Pat Hernandez | 9/16/17 0:44 | Lol thanks |

31

## VI.    Conclusion

For the foregoing reasons, the Government respectfully requests that the Court admit the evidence outlined above because the evidence is intrinsic to the charged offenses, or, in the alternative, pursuant to Rule 404(b), to permit the introduction of Ashley Marie Ditto's text messages for the truth of the matter asserted, ████████████████████████

████████████████████████████████████████████████████████████

████████

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

 /s/ Robert F. Livergood
ROBERT F. LIVERGOOD, #35432MO
CARRIE COSTANTIN #35925
Assistant United States Attorneys
111 S. 10th Street, Rm. 20.333
St. Louis, Missouri 63102
(314) 539-2200

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 6, 2021, the foregoing was filed electronically with the Clerk

of the Court to be served by operation of the Court's electronic filing system upon the following:

Patrick S. Kilgore
Attorney for Dustin Boone
1015 Locust
Suite 914
St. Louis, MO 63101
Email: patrick@patrickkilgorelaw.com; and

N. Scott Rosenblum
Attorney for Christopher Myers
120 S. Central Ave.
Suite 130
Clayton, MO 63105
Email: srosenblum@rsflawfirm.com.


/s/*Robert F. Livergood*
ROBERT F. LIVERGOOD, #35432MO
Assistant United States Attorney